**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| SPECIALTYCARE, INC., *et al.*,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>CAREFIRST OF MARYLAND, INC.<br>d/b/a CAREFIRST BLUECROSS BLUE<br>SHIELD,<br><br>    *Defendant* | Case No. 25-cv-130-ABA |

**MEMORANDUM OPINION**

Plaintiffs SpecialtyCare, Inc., Remote Neuromonitoring Physicians, PC, and Sentient Physicians, PC (collectively, "SpecialtyCare"), have sued Defendant CareFirst of Maryland, Inc. d/b/a CareFirst BlueCross BlueShield ("CareFirst"). SpecialtyCare seeks recovery on claims for out-of-network reimbursement based on perfusion and intraoperative neuromonitoring services that SpecialtyCare provided to certain CareFirst members or patients who receive their insurance from self-funded ERISA plans for whom CareFirst provides administrative services. ECF No. 1 ¶¶ 3, 13–14. In each instance, SpecialtyCare alleges, it submitted a claim to CareFirst and although CareFirst paid a portion of most of those claims, it paid far less than SpecialtyCare contends is owed under those members' or beneficiaries' plans.

As the undersigned described in a recent opinion, the relevant portions of which are incorporated herein, the No Surprises Act ("the Act" or "NSA"), 42 U.S.C. § 300gg-111, *et seq.*, which was enacted in 2020, created an Independent Dispute Resolution ("IDR") procedure. Under the IDR process, when applicable, "the provider and insurer must first negotiate and attempt to agree on a rate; if they cannot agree, the dispute is referred to a certified IDR entity; and in a process akin to 'baseball-style arbitration' . . . ,

1

the IDR entity adjudicates the disputes and determines which rate applies to the claim."
*PHI Health, LLC v. Optimum Choice, Inc.*, -- F. Supp. 3d --, 2026 WL 850453, at *2 (D. Md. Mar. 27, 2026) (citing 42 U.S.C. § 300gg-111(c)).

Here, SpecialtyCare initiated IDR proceedings with respect to the claim denials at issue. *See* ECF No. 1 ¶ 20. The certified IDR entity issued IDR determinations in SpecialtyCare's favor—determinations that SpecialtyCare contends "were rendered in accordance with the NSA, and are, therefore, binding upon CareFirst." *Id*. ¶¶ 20–21. By "binding" SpecialtyCare is referring to 42 U.S.C. § 300gg-111(c)(5)(E) of the No Surprises Act. Through that provision, Congress required that after an IDR dispute proceeding results in a final IDR award, that "determination . . . shall be binding upon the parties involved, in the absence of a fraudulent claim or evidence of misrepresentation of facts presented to the IDR entity involved regarding such claim." 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I). Despite the IDR awards being issued and legally binding, SpecialtyCare alleges, CareFirst failed to pay those IDR awards by the 30-day statutory deadline, 42 U.S.C. § 300gg-111(c)(6), and "consistently failed to remit payment pursuant to the IDR entity's determinations, resulting in $457,742 in unpaid past due amounts owed to SpecialtyCare from CareFirst." ECF No. 1 ¶¶ 22–23.

SpecialtyCare has asserted eight claims against CareFirst. In Count 1, SpecialtyCare contends that the IDR awards constitute "arbitration award[s]" and thus the Federal Arbitration Act, 9 U.S.C. § 9, entitles SpecialtyCare to an order "confirming each arbitration award." ECF No. 1 ¶¶ 33–37. Count 2 alleges a violation of Md. Code Ann., Ins. § 15-146(b), which provides that the NSA "appl[ies] to all insurers, nonprofit health service plans, and health maintenance organizations that deliver or issue for delivery in the State policies or contracts for a health benefit plan or blanket health

insurance." ECF No. 1 ¶¶ 38–40. Counts 3 and 4 assert causes of action under the NSA

itself, for "nonpayment of IDR determination" (Count 3, under 42 U.S.C. § 300gg-

111(c)(6)), and as an implied private right of action under the statute (Count 4). *Id.* ¶¶

41–45.[1] Count 5 asserts a claim under 29 U.S.C. § 1132(a)(1)(B) (the Employee

Retirement Income Security Act ("ERISA")). *Id.* ¶¶ 46–54. Counts 6 through 8 assert

claims under Maryland common law, for account stated (Count 6), open account (Count

7), and unjust enrichment (Count 8). *Id.* ¶¶ 55–70. Each count pertains to the specific

claims listed on Exhibit A of the complaint (ECF No. 1-1), which lists 234 IDR awards

totaling $512,902 awarded, of which CareFirst has paid $55,160, leaving what

SpecialtyCare calls a "debt" owed of $457,742. ECF No. 1 ¶ 22; ECF No. 1-1 at 7.

CareFirst has moved to dismiss each count. ECF No. 33. SpecialtyCare filed a

brief in opposition (ECF No. 36) and CareFirst replied (ECF No. 39). And the parties

have each filed notices of supplemental authority. ECF Nos. 40–42.

For the reasons stated by the undersigned in *PHI Health*, SpecialtyCare has

stated a claim on which relief can be granted in Count 4. That count asserts a right to

relief from CareFirst based on an implied private right of action under the No Surprises

Act. ECF No. 1 ¶¶ Count 4, 41–45. As this Court explained in *PHI Health*, the text and

structure of the NSA clearly evince a Congressional intent that final IDR awards that

remain unpaid past 30 days be enforceable in court. *PHI Health*, 2026 WL 850453, at

\*6. That is because, among other reasons, "'IDR awards under the NSA are binding once

---

[1] The complaint appears to include duplicative paragraph numbers for Counts 3 and 4 whereby both counts include paragraph numbers 41–45. Where the Court is referring to the paragraphs under the counts separately, it will refer to the paragraphs under Count 3 as "¶¶ Count 3, 41–45" and the paragraphs under Count 4 as "¶¶ Count 4, 41–45" as applicable.

they are issued.'" *Id.* (quoting *Guardian Flight LLC v. Aetna Life Ins. Co.*, 789 F. Supp. 3d 214, 227 (D. Conn. 2025)). The NSA expressly requires that "payment . . . shall be made" upon a final IDR award, 42 U.S.C. § 300gg-111(c)(5)(E)(i)(I), provisions that "unambiguously are 'rights-creating' with an 'unmistakable focus,' *Gonzaga* [*Univ. v. Doe*], 536 U.S. [273,] 284 [(2002)], on benefiting covered providers that have provided covered services and obtain favorable IDR determinations." *PHI Health*, 2026 WL 850453, at *6. The undersigned incorporates herein the full reasoning articulated in *PHI Health* on why the NSA unambiguously creates an implied private right of action. For those reasons, CareFirst's motion to dismiss Count 4 will be denied.

In contrast, SpecialtyCare has not stated a claim on which relief can be granted in Count 3, which appears to assert a claim based on an *express* cause of action under 42 U.S.C. § 300gg-111(c)(6). ECF No. 1 ¶¶ Count 3, 41–45. That statute does not contain an express private right of action; instead, it creates an implied private right of action, which SpecialtyCare has pled in Count 4. Therefore, CareFirst's motion to dismiss Count 3 will be granted.

In Count 1, SpecialtyCare asserts a claim under the Federal Arbitration Act, 9 U.S.C. § 9. As the undersigned explained in *PHI Health*, the Court need not decide at the pleading stage whether that claim may proceed.

> As explained above, the text, structure, and context of the No Surprises Act demonstrate a clear intent to have authorized judicial enforcement of IDR determinations upon a violation of a party's statutory obligation to pay. Congress may very well have envisioned that the procedural mechanism for judicial confirmation of an IDR determination would be through an action pursuant to FAA § 9. As explained above, the No Surprises Act does evince that Congress understood IDR awards to be akin to arbitration awards. But this Court need not decide whether FAA § 9 separately authorizes PHI's action

4

to enforce the IDR award because the action is independently authorized by the No Surprises Act itself.

*PHI Health*, 2026 WL 850453, at *11.

That leaves SpecialtyCare's claims under Md. Code Ann., Ins. § 15-146 (count 2), ERISA (29 U.S.C. § 1132(a)(1)(B)) (count 5), and Maryland common law (counts 6–8). As with respect to SpecialtyCare's FAA claims, the Court does not decide at this time whether any of those claims are cognizable. But, because SpecialtyCare has pled a claim (Count 4) that states a claim on which relief can be granted and thus entitles it to proceed to discovery with respect to all of the IDR disputes listed on Exhibit A to the complaint, the Court defers deciding whether those other sources of law additionally entitle SpecialtyCare to proceed in court to recover some or all of the IDR award balances that were issued against CareFirst in SpecialtyCare's favor but that CareFirst has refused to pay.

For these reasons, the Court will deny the motion to dismiss Count 4 and will grant the motion to dismiss Count 3. The Court reserves on the question of whether Counts 1–2 and 5–8 state claims on which relief can be granted; CareFirst may renew any or all of its arguments regarding those counts in connection with dispositive motions. A separate order follows.


Date:  June 9, 2026                              _____/s/_____

                                                 Adam B. Abelson
                                                 United States District Judge

5